UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUANA AYALA, et al.,<br><br>Defendants. | Case No. 5:19-cv-01060-EJD<br><br>**ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS; DIRECTING PARTIES TO MEET AND CONFER RE SCOPE AND TIMING OF DISCOVERY**<br><br>Re: Dkt. No. 32 |

Plaintiff First National Insurance Company of America ("National") initiated this declaratory relief action seeking a determination that it has no duty to defend and indemnify. Presently before the Court is Defendants Shannon Bernard and Maria Vega's motion to dismiss or to stay the proceedings pending resolution or final adjudication of their underlying state court lawsuit against Juana Ayala ("Ayala"), who is also a named defendant in the instant coverage action. Dkt. No. 32. Having considered all of the pleadings and the comments of counsel at the hearing on January 23, 2020, the Court will deny the motion.

**I. BACKGROUND[1]**

**A. Ayala's Homeowners Policy**

National is a corporation organized under the laws of New Hampshire with its principal place of business in Boston, Massachusetts. National issued a Quality-Plus Homeowners Policy to Ayala, a California resident, effective from February 14, 2012 to February 14, 2013 ("Homeowners Policy"). Compl. ¶ 9. The Homeowners Policy lists the insured location as 2161

---

[1] The Background is a summary of the allegations in the Complaint.

Mendota Way, San Jose, California 95122. *Id*. The Homeowners Policy, subject to its terms, conditions, limitations, and exclusions, has a personal liability limit of $300,000 for each occurrence. *Id*.

Under Section II – Liability Coverages, Coverage E, Personal Liability, the Homeowners Policy provides the following insuring agreement:

> If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

Comp. ¶ 9. The Homeowners Policy contains the following pertinent exclusions:

> **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply **to *bodily injury* or *property damage***:
>
> **a**. which:
>
> **(1)** is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*; or
>
> **(2)** results from violation of:
>
>    (a) criminal law; or
>
>    (b) local or municipal ordinance committed by, or with the knowledge or consent of any *insured*.
>
> This exclusion applies even if:
>
> **(3)** such *bodily injury* **or *property damage*** is of a different kind or degree than expected or intended; or
>
> **(4)** such *bodily injury* **or *property damage*** is sustained by a different person, or persons, than expected or intended.
>
> This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS

2

ordinance.

**b.** arising out of *business* pursuits of any *insured* or the rental or holding for rental of any part of any premises by any *insured*.

This exclusion does not apply to:

**(1)** Activities which are ordinarily incident to non-*business* pursuits except as excluded in h. below;

**(2)** Coverage E for the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age.

**(3)** the rental or holding for rental of a residence of yours:

**(a)** on an occasional basis for the exclusive use as a residence;

**(b)** in part, unless intended for use as a residence by more than two roomers or boarders; or

**(c)** in part, as an office, school, studio, or private garage;

**c.** arising out of the rendering or failing to render professional services;

\* \* \*

**h.** Which results from the legal liability of any *insured* because of home care services, day care, and any other hospice related activity provided to any person on a regular basis by or at the direction of:

**(1)** any *insured*;

**(2)** any employee of any *insured*;

**(3)** any other person actually or apparently acting on behalf of any *insured*.

Regular basis means more than 20 hours per week. This exclusion does not apply to:

**(1)** home care services provided to the relatives of any *insured*;

**(2)** occasional or part-time home care services provided by any *insured* under 23 years of age.

**i.** arising out of physical or mental abuse, sexual molestation or sexual harassment.

\* \* \*

**2. Coverage E – Personal Liability** does not apply to:

**a.** Liability:

\* \* \*

**(3)** for ***punitive damages*** awarded against any ***insured***;

Comp. ¶ 11. Ayala's Homeowners Policy did not include an endorsement for bodily injury and property damage arising out of or in connection with the operation of a "home care center." *Id*. ¶ 14.

### B. Underlying State Court Action

In April of 2014, Shannon Bernard ("Bernard") and Maria Vega ("Vega") filed suit against Ayala alleging negligence, premises liability, and wrongful death entitled *Bernard v. Ayala*, Santa Clara County Superior Court, Case Number 114CV263148 ("Underlying Action"). Compl. ¶ 19.[2] The Complaint in the Underlying Action contains the following allegations. Bernard and Vega are the natural parents of decedent, K. Bernard ("K.B."). *Id*. ¶ 20. Ayala was operating a daycare for children. *Id*. Bernard and Vega entrusted the care of K.B., a minor, to Ayala in return for payment of fees. *Id*. Ayala allegedly negligently and carelessly hired Alejandro Benitez ("Benitez").[3] *Id*. While K.B. was under Ayala's care, Benitez assaulted K.B., which resulted in K.B.'s death. *Id*.

### C. Coverage Action

In the instant coverage action, National alleges on information and belief that in or around August 2011, Bernard and Vega asked Ayala to provide daycare for K.B., and Ayala agreed to do so for $100 per week. *Id*. ¶ 22. Ayala told Bernard and Vega that she did not have insurance to provide daycare. *Id*. From August 2011 through April 11, 2012, Ayala provided daycare for K.B. from 9:00 a.m. to 6:00 p.m., Monday through Friday, in exchange for monetary compensation. *Id*. ¶ 23.

National alleges on information and belief that on April 11, 2012, K.B. was under the care of Ayala when he became ill, necessitating lifesaving medical services. *Id*. ¶ 24. K.B. was

---

[2] Bernard and Vega's request for judicial notice of the Complaint and two district court decisions (Dkt. No. 33) is granted.
[3] According to Bernard and Vega, Benitez was Ayala's long-time boyfriend. Dkt. No. 32 at 11.

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS
4

transported by ambulance to the hospital and passed away shortly after being taken from Ayala's home. *Id*. National alleges on information and belief that Benitez was arrested for the sexual assault and murder of K.B. *Id*.

In September of 2012, Ayala tendered her defense and indemnity of the anticipated Underlying Action to National. Compl. ¶ 26. In March of 2013, National denied coverage. *Id*. ¶ 27. The Complaint in the Underlying Action was filed on April 2, 2014. *Id*. ¶ 28. On or about January 29, 2019, Ayala's attorney requested reconsideration of the March 2013 declination letter. *Id*. ¶ 29. On February 25, 2019, National affirmed its declination of coverage. Dkt. No. 39-1. In the declination letter, National explained that during its investigation, Ayala advised National that she provided daycare for her two grandchildren and K.B. Dkt. No. 39-1 at 13. "Ayala agreed to provide daycare for [K.B.], Monday through Friday, for $100 per week. Pursuant to the arrangement, from August, 2011 through April 11, 2012, Ayala provided daycare for [K.B.] from 9:00 a.m. to 6:00 p.m., Monday through Friday." *Id*. Based upon this information, National concluded there was no coverage for the Underlying Action pursuant to California Insurance Code § 676.1(c), which provides as follows:

> It shall be against public policy for a residential property insurance policy to provide coverage for liability for losses arising out of, or in connection with, the operation of a family day care home. This coverage shall only be provided by a separate endorsement or insurance policy for which premiums have been assessed and collected.

Cal. Ins. Code § 676.1(c). National also denied coverage based on Exclusions 1.b (bodily injury arising out of business pursuits), 1.c (failure to render professional services), 1.h (day care), and 1.i (physical abuse or sexual molestation), and because of Ayala's alleged failure to cooperate. Dkt. No. 39-1.

On February 26, 2019, National initiated the instant coverage action against Ayala, Bernard and Vega, asserting claims for (1) Declaratory Relief-No Duty to Defend, (2) Declaratory Relief-No Duty to Indemnify and (3) Declaratory Relief-Failure to Cooperate. Compl. ¶¶ 30-45. The Clerk entered default as to Ayala on August 13, 2019. Dkt. No. 22. To date, National has not

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS
5

1 sought default judgment against Ayala.

2 Bernard and Vega now move to dismiss or, in the alternative, to stay this action pending resolution or final adjudication of their Underlying Action. National opposes the motion.

### D. Current Status of Criminal and Underlying Actions

Bernard and Vega filed their motion to dismiss or stay on August 28, 2019. At the time Bernard and Vega filed their motion, the criminal case against Benitez was ongoing and the Underlying Action was stayed. A protective order issued in the Underlying Action prohibits all parties, witnesses, counsel's employees or consultants from discussing or disclosing to any third party the nature of the evidence or testimony involved in the criminal action and Underlying Action. Dkt. No. 32-2. This protective order is to remain in place pending trial of the Underlying Action and until such time as the initial trial of the criminal action is completed. *Id*.

After the motion was filed, Benitez pleaded guilty to voluntary manslaughter two counts of felony lewd and lascivious acts by force with a minor under 13, and one count of kidnapping. Dkt. No. 45 at 11. National anticipates that after Benitez is sentenced, the records from the criminal action will no longer be sealed and National will be able to proceed with a motion for summary judgment. *Id*.

In October 2019, Bernard and Vega sought and were granted leave to file an amended complaint in the Underlying Action. Dkt. No. 45 at 6.[4] The First Amended Complaint eliminates any reference to a day care operation. *Id*. The First Amended Complaint now alleges that:

> b. Defendant Ayala was a personal friend of Plaintiffs. On April 11, 2012, and for some time prior thereto, defendant Ayala, as a favor to Plaintiffs, agreed to watch Kaden Bernard, a minor, for sporadic times while his parents. Shannon Bernard and Maria Vega were at work.
>
> c. At all times herein mentioned, defendants Ayala knew or should have known that this undertaking created a duty to care for, supervise, protect and prevent harm from befalling Kaden Bernard, and to ensure that he was safe while in her care.

---

[4] Bernard and Vega's request for judicial notice of their First Amended Complaint (Dkt. No. 42) is granted, and National's objection to the First Amended Complaint (Dkt. No. 43) is overruled.
Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS
6

> d. At all times herein mentioned, defendant Ayala acted negligently and carelessly failed to exercise reasonable care in supervising, protecting and preventing harm from befalling Kaden Bernard. Said failure to exercise reasonable care added to the risk of, and was a substantial factor in, causing personal injury to, and the death of, Kaden Bernard.

First Am. Compl. ¶¶ b-d. The Underlying Action remains stayed for all purposes. Dkt. No. 45 at 1.

## II.  Motion to Dismiss Or Stay Under *Brillhart*

The Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id*. at 288. In *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942), the Supreme Court established three factors for the court to consider when determining whether to accept or decline jurisdiction over a declaratory relief action: (1) avoiding the needless determination of state law issues; (2) discouraging litigants from forum shopping; and (3) avoiding duplicative litigation. *Gov't Emp.'s Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id*. (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366–67 (9th Cir. 1991)). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id*.

Bernard and Vega assert that the instant coverage action involves overlapping issues to be tried in the Underlying Action such that continued pursuit of the coverage action will severely prejudice their prosecution of the Underlying Action, as well as prejudice Ayala. National opposes the motion, asserting that a stay is unnecessary and that Bernard and Vega, who are not insureds, have failed to establish a clear case of hardship or inequity if the coverage case proceeds. National also argues that continued prosecution of the coverage case will have no impact on the

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS

7

Underlying Action because a coverage determination can be made without engaging in any discovery. According to National, this Court can adjudicate the coverage action by reviewing the Homeowners Policy, the pleadings in the Underlying Action, and the facts known to National at the time of tender. In the alternative, National requests that the Court stay only those issues that might be potentially overlapping with the Underlying Action, while permitting National to proceed with a motion for summary judgment predicated solely upon the pleadings in the Underlying Action, the terms of the Homeowners Policy, California Insurance Code § 676.1(c) and the facts known to National at the time of tender.

The first *Brillhart* factor, avoiding the needless determination of state law issues, does not weigh in favor of a complete stay or dismissal of the coverage action. National intends to proceed with a motion for summary judgment predicated solely upon the pleadings the Underlying Action, the terms of the Homeowners Policy, California Insurance Code § 676.1(c) and the facts known to National at the time of tender. To the extent National's focus is limited to these discrete areas, there will be minimal factual overlap, if any, between the Underlying Action and the coverage action.

The second *Brillhart* factor, discouraging litigants from forum shopping, also does not weigh in favor of a complete stay or dismissal of the coverage action. There is no evidence that National has engaged in improper forum shopping. Nevertheless, Bernard and Vega argue that they have a right to litigate their state law claims in their chosen state forum "without an insurance company interfering with their claims." Dkt. No. 32 at 9. Bernard and Vega also argue that they should not be forced to fight a two-front war with their focus and resources pulled away from the Underlying Action. As discussed above, National intends to proceed with a narrow summary judgment motion on the issue of coverage. National's proposed summary judgment will not require delving into the factual issues likely to be raised in the Underlying Action, and therefore will not interfere with Bernard and Vega's right to litigate the Underlying Action. For the same reason, the third *Brillhart* factor—avoiding duplicative litigation—is not implicated.

In sum, the *Brillhart* factors do not warrant a full stay or dismissal of the coverage action.

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS

8

Nevertheless, the Court is prepared to limit and/or stage discovery to alleviate Bernard and Vega's concerns. The parties are invited to submit a stipulation and proposed order that sets reasonable limits on the scope and timing of discovery that must be completed prior to the filing of National's anticipated summary judgment motion.

### III. Motion to Dismiss Under *Landis*

Bernard and Vega also move to stay or dismiss pursuant to California law governing declaratory relief actions under *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993), and pursuant to the Court's inherent powers to stay proceedings as set forth in *Landis v. North American Co.*, 299 U.S. 248 (1936).

The Court finds that *Landis*, not *Montrose* applies. Federal courts sitting in diversity apply federal procedural law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). A stay of an action is procedural, not substantive. *United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, No. 18-1649 BLF, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018).[5]

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. A trial court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Levya v. Certified Grocers of Cal., Ltd.,* 593 F.2d 863–64 (9th Cir. 1979)). "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly

---

[5] That said, the *Brillhart* factors mirror California law's mandate of a stay "when the coverage question turns on facts to be litigated in the underlying action." *Brillhart*, 316 U.S. at 495; *Montrose*, 6 Cal. 4th at 301. As explained above, a full stay or dismissal of the coverage action is not warranted under *Brillhart*.

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS
9

course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. The party seeking a stay bears the burden of establishing a "clear case of hardship or inequity in being required to go forward" with a lawsuit "if there is even a fair possibility that the stay . . . will work damage to some one else." *Landis*, 299 U.S. at 255.

### A. Possible Prejudice From Granting Stay

"[U]nder California law, insurance companies have the right to determine their obligations to their insureds prior to a judgment against their insureds." *State Farm Fire & Cas. Co. v. Thomas*, 756 F. Supp. 440, 442 (N.D. Cal. 1991). However, National has not shown it will be prejudiced by a stay. This *Landis* factor does not weigh against a stay.

### B. Possible Hardship or Inequity From Denying Stay

The next *Landis* factor is the possible hardship or inequity to Bernard and Vega from denying the stay. For reasons already discussed above, proceeding with National's proposed summary judgment will not significantly impact Bernard and Vega's Underlying Action. According to National, the main coverage question will turn on whether the Homeowners Policy provides coverage for liability arising out of a family day care home and whether National properly denied coverage pursuant to California Insurance Code § 676.1(c). Dkt. No. 39 at 10. National intends to file an early summary judgment focused on whether Ayala was operating a family day care home. This coverage issue is independent of the liability issues in the Underlying Action. National's proposed summary judgment will not require the Court to address the merits of Bernard and Vega's causes of action for negligence, premises liability and wrongful death. Bernard and Vega will maintain their ability to prosecute the Underlying Action without prejudice and without the risk of inconsistent results or duplicative litigation. The second *Landis* factor does not justify a stay.

### C. Orderly Course of Justice

The third *Landis* factor is whether a stay will complicate or simplify the issues before the Court. The relevant inquiry for this factor is whether the Underlying Action and the coverage

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS
10

action factually and/or legally overlap. *See United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, 2018 WL 5291992, at \*6 ("asking whether the two cases factually and/or legally overlap—to determine if a stay is appropriate"). Although the two cases have significant factual overlap, National intends to proceed with a narrow summary judgment motion that focuses on whether Ayala was operating a day care home. Therefore, at present, the third *Landis* factor does not warrant a complete stay of the coverage action.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion is DENIED without prejudice. The parties are invited to submit a stipulation and proposed order that sets reasonable limits on the scope and timing of discovery that must be completed prior to the filing of National's anticipated summary judgment, as well as a briefing schedule and hearing date for National's motion. National's motion for summary judgment shall be limited to the applicability of Exclusion 1.h and California Insurance Code § 676.1(c). The parties shall file the stipulation and proposed order no later than February 6, 2020. In the event the parties are unable to reach agreement, the parties shall submit competing proposed orders for the Court's review. If National does not prevail on its anticipated summary judgment, Bernard and Vega may renew their motion to stay the action.

**IT IS SO ORDERED.**

Dated: January 23, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-01060-EJD
ORDER DENYING MOTION TO DISMISS OR STAY PROCEEDINGS
11